## W. MACRUM, TRUSTEE, v. THOS. M. MARSHALL.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 2, 1887—Decided October 7, 1889.
[To be reported.]

1. An acknowledgment of an indebtedness, sufficient to toll the bar of the statute of limitations, must recognize and be directed to the debt with clearness, and must amount to an unqualified admission that it remains due and unpaid.
2. An agreement by an indorser of a note that the holder may sell, for less than its face, a judgment obtained against the maker for the amount of the note, is not a recognition of liability sufficient to take the cause out of the operation of the statute.
3. Nor will a subsequent renewal of such agreement, accompanied by a waiver " of any statute plea thereon," operate as a waiver of the bar of the statute, the reference of the words clearly being to another subject, the sale of the judgment for less than its face value.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.

No. 168 October Term 1887, Sup. Ct.; court below, No. 207½ July Term 1886, C. P. No. 2.

On May 6, 1886, William Macrum, trustee for creditors o' the Allegheny Savings Bank, brought assumpsit against Thomas M. Marshall, to recover a balance alleged to be due to the plaintiff from the defendant, as indorser of a note drawn by S. Woods, Jr. The defendant pleaded payment and the statute of limitations.

At the trial, March 23, 1887, the following facts were shown:

Statement of Facts.

The Allegheny Savings Bank was a private banking association doing business in the city of Allegheny. In September, 1875, said bank discounted a note for $1,500, dated September 8, 1875, drawn by S. Woods, Jr., payable at the Allegheny Savings Bank, sixty days after date, to the order of Robert Woods, and indorsed by Robert Woods and Thomas M. Marshall. Upon this note Mr. Marshall was an accommodation indorser. He was at the same time accommodation indorser upon a number of other notes held by the bank. Both before and after the maturity of the note in suit, he made various payments to the bank on account of his liability to it as an indorser, without specific appropriation thereof to any particular notes. He also rendered legal services to the bank, and claimed a credit upon his indebtedness for the compensation to which he was entitled for said services, alleging upon the trial that, counting interest upon the notes on which he was liable at six per cent, the credits which he claimed more than paid his indebtedness to the bank.

When the note in suit matured, the indorsers, Robert Woods and Thomas M. Marshall, signed a paper waiving protest thereon, the note being specifically referred to and identified in the paper. The bank then sued the maker, S. Woods, Jr., and obtained a judgment against him for its amount, but realized nothing thereon. In 1876 the bank failed, and its assets passed into the hands of Mr. M. Hay, who was duly appointed trustee for its creditors. Among these assets were the note in suit and the judgment against S. Woods, Jr., above mentioned. On May 6, 1880, having found an opportunity to sell said judgment for $500, the trustee applied to Mr. Marshall for his consent to such sale, whereupon Mr. Marshall signed the following agreement, written at the foot of the paper waiving protest upon the note in suit:

" I agree to sale of the judgment on this note against S. Woods for the sum of five hundred dollars, and agree to ratify the same for M. Hay, trustee.

" PITTSBURGH, May 6, 1880.      THOS. M. MARSHALL."

In pursuance of the consent thus obtained, the trustee made sale of said judgment for $500.

In 1885 the trustee, Mr. M. Hay, died, and William Macrum was appointed in his stead. On May 5, 1886, Mr. Macrum procured from Mr. Marshall the following agreement, written below the agreement of May 6, 1880, and upon the same paper:

Opinion of Court below.

"I renew the agreement of May 6, 1880, as of this date, and I waive any statute plea thereon.

"PITTSBURGH, May 5, 1886.          THOS. M. MARSHALL."

At the conclusion of the testimony the court, WHITE, J., charged the jury, submitting to them the questions of fact raised by the evidence, but reserving for the consideration of the court the question whether the agreements of May 6, 1880, and May 5, 1886, were sufficient in law to take the case out of the statute of limitations.

The defendant prayed the court to instruct the jury:

1. That upon all the evidence the verdict should be in favor of the defendant.

Answer: Refused. The only question in this case is a question of law, as to the effect of the agreements signed by Mr. Marshall, May 6, 1880, and May 5, 1886, which constitute the reserved question.[1]

The jury rendered a verdict for the plaintiff, subject to the opinion of the court upon the question of law reserved, setting out in the verdict copies of the waiver of protest and of the agreements signed by the defendant, dated respectively May 6, 1880, and May 5, 1886.

After argument the court entered judgment for the plaintiff upon the verdict, WHITE, J., filing an opinion, which after reciting the agreement set out in the verdict, proceeded as follows:

This suit was brought May 6, 1886, against defendant as indorser on the note. The question of law reserved is, do these agreements take the case out of the statute of limitations?

This agreement of May 5, 1886, was evidently intended to waive the statutory plea as to time. It was more than ten years after the maturity of the note, and within one day of six years after the agreement of May 6, 1880; but it seems to me the agreement was broader than that. It renews the agreement of May 6, 1880, the same as if that agreement had been repeated in the same words, and then adds: "And I waive any statute plea thereon." The plea of the statute embraces the sufficiency of the promise or acknowledgment, as well as the lapse of time.

But that question is not material, perhaps, as the suit was brought within six years from the agreement of May 6, 1880.

That agreement was made within six years from the maturity of the note, while the claim was alive, and the liability of the defendant as indorser is undeniable.

The bank had failed; M. Hay was trustee, to settle up its affairs; judgment had been obtained against Stephen Woods, Jr., on the note, and the other indorser, Robert Woods, was dead. The defendant was liable to be called upon at any time to pay the whole amount of the note, and look to Stephen Woods for the money. The trustee could realize $500 on the judgment, but no more. But he could not safely sell that judgment without the consent of defendant. The money realized in that way would be in relief of defendant. He was asked if he would consent that the trustee should sell the judgment for that sum. The only conceivable reason for asking his consent, or for him giving it, was that he was interested in that judgment, or the claim for which it had been obtained. He was thus interested. He was liable for the whole debt. If he paid it, he had a right to have that judgment assigned to him. His consenting to the sale, therefore, must be considered as an acknowledgment of his interest and liability in the matter.

The agreement was upon the same paper containing the waiver of protest. If it had been upon a separate paper there would have been nothing to identify the note or the amount of the claim, and it would have been, therefore, insufficient to toll the statute. But, being on the same paper which waived protest and accurately described the note, and expressly referring to " the judgment on this note," there can be no doubt as to the note or the amount of the claim.

These facts constitute a clear and distinct acknowledgment of the debt, and of the defendant's liability to pay it. No express promise to pay is necessary. The law implies a promise to pay where the facts are consistent with such a promise. The facts in this case are consistent with that theory and no other: Wolfensberger v. Young, 47 Pa. 516; Johns v. Lantz, 63 Pa. 324; Finkbone's App., 86 Pa. 368; Wesner v. Stein, 97 Pa. 322; Shaeffer v. Hoffman, 113 Pa. 1.

Thereupon the defendant took this appeal, assigning for error:

1. The answer to defendant's point.[1]
2. The entry of judgment for the plaintiff.

*Mr. A. M. Imbrie*, for the appellant:

1. It is evident the plaintiff did not regard the memorandum of May 5, 1886, as a waiver of the statute of limitations upon the note, for suit would not then have been entered immediately. It is equally clear that this memorandum, and the preceding one of May 6, 1880, are no more an acknowledgment of liability on the note than the waiving of protest. But a waiver of protest does not estop the indorser from setting up any defence he may have against the holder, except that specifically waived.

2. To take a case out of the statute of limitations, the acknowledgment of the debt must be clear, distinct and unequivocal. In these agreements there is no acknowledgment of indebtedness, distinct or otherwise. They are perfectly consistent with the theory that Mr. Marshall denied all liability on his part. He simply consented that the trustee make what he could out of the judgment. An offer to purchase it had been made, and there was no time for the adjustment of accounts. The court, therefore, gave the agreement of May 5, 1886, a forced construction, contrary to its express terms.

3. A naked admission of indebtedness or a promise to pay something without indicating the amount or nature of the debt to be paid, is insufficient: Painter's App., 18 W. N. 441; Landis v. Roth, 109 Pa. 621; Hobaugh v. Murphy, 114 Pa. 358 (5 Cent. R. 476). There is nothing in these agreements indicating the amount or nature of the debt, or a promise to pay. If there is any acknowledgment of indebtedness, how much was acknowledged? Was it $1,500, less the amount credited on the bank's books, and the fees for the defendant's professional services? The paper is consistent with Mr. Marshall's claim of over payment, in which case he would have an interest in the judgment by way of subrogation.

*Mr. George W. Guthrie* (with him *Mr. W. Macrum*), for the appellee:

1. The agreement of May 6, 1880, was an acknowledgment made to the creditor, less than five years after the maturity of the note, and within six years of the bringing of this suit. It identifies the debt and is an acknowledgment of liability, not only consistent with a promise to pay, but inconsistent with any other idea. Unless the defendant was liable on the note,

there was no reason to ask him to consent to the sale of the judgment, and his consent to and agreement to ratify it were a mere farce. We refer to Finkbone's App., 86 Pa. 368, and Wesner v. Stein, 97 Pa. 322, as showing what acts have been sufficient to waive the statute of limitations. The analogy between the cases cited, and the case now before the court, is complete. In this case, as in Finkbone's Appeal, the debtor made a memorandum upon a paper attached to the original obligation, and returned it to the creditor. And, as in Wesner v. Stein, the defendant ratified the application on the debt of money received by the creditor.

2. If there can be any doubt as to the meaning and legal effect of the agreement of May 6, 1880, it is removed by the supplemental agreement of May 5, 1886. If the latter was not intended as a waiver of the bar of the statute to an action on the note, for what purpose was it given? Mr. Marshall is a lawyer, and knew that the first agreement was functus officio, so far as it operated to give consent to the sale of the judgment, and there was no conceivable reason for renewing that consent or waiving any plea in regard to it, particularly any statute plea, for the statute had nothing to do with it. The only agreement which required renewal was the implied agreement to pay the note, and this writing should be construed so as to give it effect. Mr. Marshall's counter-claim was a mere matter of set-off, and any uncertainty as to its amount did not render uncertain the amount of the liability he acknowledged.

OPINION, MR. JUSTICE WILLIAMS:

The controversy in this case lies within very narrow limits. Stephen Woods was the maker of a promissory note for $1,500, dated September 8, 1875, and payable to Robert Woods at the Allegheny Savings Bank. It was indorsed by the payee, and by Thomas M. Marshall, the plaintiff in error. At the maturity of the note on November 10, 1875, the maker was unable to provide funds for its payment, and the indorsers made a written waiver of protest. An action was brought against the maker, and a judgment obtained for the amount of the note and interest, at the suit of the savings bank, but no action was brought against the indorsers. Nothing appears to have been collected on the judgment against Stephen Woods, but some one offered

the bank $500 for it. Before accepting the offer, the bank applied to Mr. Marshall for his consent to the proposed sale, which he gave in writing, as follows: "I agree to sale of the judgment on this note against S. Woods for five hundred dollars, and agree to ratify same for M. Hay, trustee. Pittsburgh, May 6, 1880. [Signed] THOS. M. MARSHALL." Nothing more was done, so far as Mr. Marshall was concerned, until May 5, 1886, six years, less one day, after the written consent to the sale of the judgment had been given, and more than ten years after the maturity of the note and the waiver of protest. At that time it appears that Mr. Marshall was asked to waive the statute of limitations on his indorsement. This he declined to do, but he renewed his agreement of May 6, 1880, by a writing indorsed upon the same paper, in these words: "I renew the agreement of May 6, 1880, as of this date, and I waive any statute plea thereon. Pittsburgh, May 5, 1886."

The court below held this to be a waiver of the statute upon his liability as an indorser upon the note of Stephen Woods, and the correctness of this holding is the question in this case. The note matured on November 10, 1875. This suit was brought on May 6, 1886. The statute of limitations is an answer, prima facie, to the plaintiff's demand, and the burden is on the plaintiff to show that the bar of the statute has been tolled. The only evidence for this purpose is the agreement of May 6, 1880, renewed on May 5, 1886; and, unless this shows a clear and distinct admission or recognition of the liability of Mr. Marshall for this debt, the plaintiff must fail. For what purpose was the agreement of May 6, 1880, asked by the bank, and given by the indorser? The bank held a judgment for the amount of the note and interest against Stephen Woods, the maker. The use of legal process had realized nothing upon it. The bank was offered $500 for an unconditional sale of it, and was evidently inclined to accept the offer, if this could be done safely. The danger was that the indorser might insist that a sale of the judgment for less than its face was improvident and unnecessary, and treat it as a distinct ground of defence, if called upon to pay the balance. To settle this question, Mr. Marshall was asked to consent to the sale, which he did. By so doing he said in effect to the bank,

Opinion of the Court.

"If you attempt to compel payment of the note by me, whatever other defences I may set up, I will not allege that you have sold this judgment for less than it was worth." The agreement is not inconsistent with any other line of defence than the specific one which was in the mind of both parties, and which is clearly referred to in the writing. Mr. Marshall might, with entire fairness, deny his indorsement, allege payment by him, or set up the statute of limitations, and yet be willing that the bank should realize whatever it could from its own judgment against Woods by a sale of it for the best price offered. The bank exercised a proper caution in asking the consent of the indorser to the sale. The indorser, if satisfied that the sale was a proper one, acted with fairness in giving his assent to it. This was the only purpose for which the agreement was asked for by the bank or its representative. It is the only subject to which it relates, and it is the only line of defence on which it closes the mouth of him who signed it.

Coming down, now, to the agreement of May 5, 1886, we find it to be a renewal of that of May 6, 1880, and nothing more. Short as it is, it is tautological, and fully one half of it is unnecessary. It runs thus : " I renew the agreement of May 6, 1880, as of this date, and waive any statute plea thereon." The word "thereon" must refer to the agreement of May 6, 1880 ; but the sentence of which it is part is superfluous. The operative words of the agreement are these : " I renew the agreement of May 6, 1880." The words " as of this date " express the legal effect of the words preceding them, and neither add to nor take from that effect ; they are wholly unnecessary. The same may be said of the remaining words, " and I waive any statute plea thereon." This had been already done by the agreement to renew, as effectually as it was possible to do by any form of words whatever. The original agreement gave consent to the sale of the judgment for much less than its face. The agreement of May 5, 1886, renewed that consent. If there was danger that Mr. Marshall might be relieved from that consent by lapse of time, its renewal in express words removed that danger, and expressed his willingness to remain bound by it. Further than this the agreement was never intended or understood to go when originally made, and it is not probable that the renewal agreement would have received any

other construction but for the unnecessary and meaningless words it contains.

The cases cited and relied on by the defendant in error are not in point. In Finkbone's App., 86 Pa. 368, Wiley had given a receipt for money to be returned to Mary Finkbone, "in such amounts as she may want." He received another sum to be held in the same manner, and wrote the receipt therefor on the same piece of paper, and directly under the first, and then re-delivered the paper to her. This was properly held to be an admission of the amount shown to be due on the face of the paper at the date of such last receipt and delivery. In Wesner v. Stein, 97 Pa. 322, the rule is clearly stated that an acknowledgment, to take a case out from the operation of the statute, must be clear and unambiguous. It must recognize, and be directed to, the debt with sufficient clearness, and must amount to an unqualified admission that it remains due and unpaid. The words relied on in this case do not meet the test. They refer clearly to another subject,—the sale of the Woods judgment. If Mr. Marshall was now objecting to that sale, his agreement that it might be made ought to conclude him; but, as he is defending upon wholly different ground, we do not see that he is affected by it in any manner.

Judgment reversed, and judgment is now entered in favor of the defendant on the question reserved. An opinion was filed in this case soon after it was heard, which we are informed by the prothonotary cannot be found. This opinion is now filed for that reason.